**NORTHWEST AIRLINES, INC.,**
**a Minnesota corporation,**
**Plaintiff,**

v.

**THE TICKET EXCHANGE, INC.,**
**an Alaska corporation, et al.,**
**Defendants.**

**No. C91–745D.**

United States District Court,
W.D. Washington, at Seattle.

June 5, 1992.

---

David L. Tift, John Peter Mele, Ryan, Swanson & Cleveland, Seattle, for plaintiff.

Robert C. Dickerson, II, John Michael Silk, Wilson, Smith, Cochran & Dickerson, Seattle, for defendants.

## ORDER

DIMMICK, District Judge.

The Court has before it the motion of plaintiff Northwest Airlines, Inc. for partial summary judgment and injunctive relief, and the motion of defendant, The Ticket Exchange, Inc., for summary judgment dismissal of all of plaintiff's claims. After full consideration of the facts and arguments presented, the Court grants plaintiff's motion to the extent of declaring defendant to be in violation of Washington's Consumer Protection Act ("CPA"), RCW 19.86.020 *et seq.* and granting injunctive relief pursuant to RCW 19.86.090. Further, the Court concludes that Northwest is entitled to compensation under the doctrine of unjust enrichment. The remainder of plaintiff's motion and defendant's motion in its entirety are denied.

## FACTS

Plaintiff Northwest Airlines, Inc. ("Northwest") brought this action against defendant The Ticket Exchange ("Exchange") seeking damages and injunctive relief because of the Exchange's brokering of Northwest's frequent flyer certificates. These certificates are awarded to frequent flyers of Northwest as a bonus.

Northwest began a frequent flyer program entitled "WORLDPERKS" in 1986. The WORLDPERKS program rewards customers on the basis of numbers of miles flown. The WORLDPERKS rules permit the transfer of frequent flyer awards, but prohibit the sale or brokerage of the awards. Northwest's Fly–Write tickets have a space for the original recipient's signature, by which WORLDPERKS members certify that they have not and will not receive compensation for the ticket.

The Exchange admits its past purchase and sale of Northwest Fly–Write tickets and has expressed its intent to continue in this activity. The Exchange has advertised its willingness to purchase Fly–Write tickets. The Exchange has known since at least 1989 that it was the policy of Northwest that Fly–Write tickets were not to be sold and that the Fly–Write ticket contained the words "void if sold." See Deposition of Pellham Jackson, at 78–115. It is admitted that if the original recipient did not sign the Fly–Write ticket then someone from the Exchange would do so. An Exchange agent also instructed ticket purchasers to state if questioned that the ticket was a gift. Deposition of Jackson, at 78.

Northwest submits an affidavit to the effect that the Exchange sold $185,774 worth of Fly–Write tickets between August 23, 1989 and July 30, 1991. Northwest asserts the value of these tickets as $360,579 calculated on the basis of Northwest's lowest regular fare.

The Exchange states that it was never notified by Northwest that it should not broker the Fly–Write tickets, despite the Exchange's advertising that it would purchase such tickets. Northwest admits knowledge of brokering activities since the inception of the program. Brennan Deposition, at 63. The Exchange states that it believed that Northwest acquiesced in the brokerage of its tickets and benefitted from the sales in terms of increased good will.

Northwest does not have any specific facts as to persons who used a Fly–Write ticket brokered by the Exchange (or any other broker) who otherwise would have purchased a ticket from Northwest. Northwest agents, however, express their opinion that brokering distorts the economics of Northwest's WORLDPERKS pro-

gram and that Northwest is deprived of the revenue that goes to the Exchange which would otherwise be spent on a ticket purchased from Northwest.

Northwest's complaint filed May 30, 1991 asserts federal question jurisdiction under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 *et seq.*); the Lanham Act (15 U.S.C. § 1125(a)); and 28 U.S.C. § 1332 (diversity); with pendent jurisdiction over state claims. Northwest's claims are:

    I.    Fraud;

    II.    Conspiracy to commit fraud and abetting fraud;

    III.    RICO (section 1962(b) and section 1962(c));

    IV.    Washington Consumer Protection Act (RCW 19.86.020);

    V.    Tortious interference with contract;

    VI.    Interference with prospective economic advantage;

    VII.    Conversion; and

    VIII.    Lanham Act (trademark) violation.

Northwest's motion for partial summary judgment seeks a finding of liability under Claims I, II, IV and V.

## DEFENDANT'S MOTION

The Exchange seeks summary judgment dismissal of all of plaintiff's claims. Its motion is largely premised on the lack of evidence of actual damages to Northwest.[1] The Exchange also asserts the affirmative defenses of waiver, estoppel and laches.

The Court will discuss first the Exchange's arguments for summary judgment dismissal of all of Northwest's claims and incorporate within that discussion Northwest's response on the damage issue.

■ The Exchange relies on Northwest's lack of specific damage evidence to defeat all of Northwest's claims, relying on *Transworld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676 (9th Cir.1990). That case similarly involved transfer of airline frequent flyer bonuses.

There, the Ninth Circuit held that the reasonableness of *Transworld's* tariffs required an evidentiary hearing; but that the policy against restraints on alienation of property would not defeat enforcement of frequent flyer awards as such awards are more properly characterized as contracts. These points are not at issue here. The *Transworld* court did reverse the district court's issuance of an injunction and remanded for a determination of actual damages, noting four possible methods for determining damages: (1) displacement of legitimate frequent flyers; (2) displacement of passengers who would otherwise pay full fare; (3) increased use of frequent flyer bonuses because of their sales; (4) use of frequent flyer bonus tickets by passengers who would otherwise purchase a ticket from the airline. *Id.* at 691–92. The circuit court noted that the district court had relied on only the first two theories and cast doubt on the validity of the first. Analysis of the tort claims was premised on California law.

Northwest counters by asserting its so-called "stowaway" theory to establish fact of damages. The airline insists that it is under no obligation to provide transportation to a passenger without a valid ticket regardless of whether or not the plane is fully occupied. The stowaway theory is premised on a line of old railroad cases. *Bitterman v. Louisville & Nashville Railroad Co.*, 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171 (1907); *Kirby v. Union Pacific Railroad Co.*, 51 Colo. 509, 119 P. 1042 (1911); *Clark v. Great Northern Railway Co.*, 31 Wash. 658, 72 P. 477 (1903); *Boston & Lowell Railroad Co. v. Proctor*, 1 Allen 267 (Mass.1861). These cases establish the right of a railroad to limit transferability of tickets issued and to eject passengers using invalid tickets or require full payment from them.

The *Bitterman* Court held that a legal wrong had occurred amounting to an interference with contract when non-transferable tickets were purchased and sold by the defendants. The Court held that the rail-

---

**1.** This Court has bifurcated trial of liability and damages. The issue now before this Court relates to fact of damages, not measure of damages.

road had a right to sell tickets with restrictions on transferability, and the restrictions were binding not only on the original purchaser, but also on subsequent purchasers. *Id.* 28 S.Ct. at 96. The Court also recognized the difficulty in ascertaining and proving damages and the wisdom of a permanent injunction against future unlawful transfers. *Id.* 28 S.Ct. at 99. A recent federal district court decision applied the reasoning of *Bitterman* and *Kirby* to facts similar to the instant case and granted the airline partial summary judgment as to liability despite the airline's inability to "document a specific instance of lost revenue." *American Airlines, Inc. v. Platinum World Travel,* 769 F.Supp. 1203 (D.Utah 1990).

This Court agrees with the *Platinum World* conclusion that the airline's inability to document specific instances of financial harm will not defeat its claims. This Court also concludes that the Ninth Circuit decision in the *American Coupon* case is not opposed. The court there did not reach the stowaway issue. Although there is reference to *Bitterman,* there is no discussion of its per se holding on damages. Moreover, *American Coupon* was premised on California law, and this case relies primarily on Washington law.

■ The assertion by the Exchange of waiver, estoppel and laches as defenses to Northwest's claims is backed by sufficient evidence to create issues of fact as to the Exchange's liability for acts prior to initiation of this suit. Those affirmative defenses, however, will not operate to defeat liability for acts taken after Northwest gave clear notice by filing suit that it did not intend to relinquish its rights. *See Transworld Airlines, Inc. v. American Coupon Exchange, Inc.,* 913 F.2d 676, 695–96 (9th Cir.1990) (declaration of rights operating prospectively will not prejudice defendant).

The Ticket Exchange has also challenged specific aspects of Northwest's eight claims as part of its motion for summary judgment. Some will be discussed in relation to Northwest's motion for summary judgment. The remainder are reserved as issues of fact.

## PLAINTIFF'S MOTION

Northwest moves first for partial summary judgment of liability on the basis of Washington's Consumer Protection Act, RCW 19.86.090 ("CPA"). The elements of a private action under the CPA are "(1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; ... [(4)] a showing of injury to plaintiff in his or her business or property; [and (5)] ... a causal link...." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 784–85, 719 P.2d 531 (1986). The first element is examined as to whether the alleged unfair act had "the capacity to deceive a substantial portion of the public." *Id.* at 784–85, 719 P.2d 531.

■ The Exchange argues that Northwest has not established the necessary elements and that it lacks standing to make a CPA claim. Its reason for challenging standing is the lack of a "direct consumer relationship" or "transaction" between the parties.

This Court concludes that Northwest has established violations of the CPA. By its admitted acts, the Exchange has conducted deceptive or unfair practices in trade or commerce. By instructing purchasers to say that tickets were a gift and by failing to instruct purchasers that they were subject to forfeiture of their tickets if the misstatements were discovered, the Exchange has demonstrated the capacity to deceive a substantial portion of the public. As discussed above, there has been an injury to Northwest caused by the Exchange's deceptive acts.[2] By establishing these elements, Northwest need not prove it was a "consumer." The Exchange is liable to Northwest for violation of the CPA, at

---

2. Additionally, under the CPA, an injury need not be reflected in a monetary loss, but includes such things as loss of good will. *Nordstrom,*

*Inc. v. Tampourlos,* 107 Wash.2d 735, 740, 733 P.2d 208 (1987).

least for the period following the filing of this suit.

■ The CPA also provides for injunctive relief at RCW 19.86.090: "Any person who is injured in his or her business or property by a violation of RCW 19.86.020 ... may bring a civil action in the superior court to enjoin further violations...." Northwest is thus entitled to a permanent injunction against the brokering of its tickets when the tickets are clearly marked void if sold.[3]

■ Northwest has also premised its motion for partial summary judgment on the equitable doctrine of unjust enrichment. That is, the Exchange has wrongfully purchased and sold Northwest tickets, and, as a result, Northwest has transported passengers without valid tickets. It is self-evident that the purchaser of a Fly–Write ticket is willing to pay the reduced rate to fly on Northwest. Thus arguably Northwest is entitled to that fare.

Under Washington law unjust enrichment occurs "where money or property has been placed in a party's possession such that in equity and good conscience the party should not retain it." *Lynch v. Deaconess Medical Center*, 113 Wash.2d 162, 166, 776 P.2d 681 (1989) (citations omitted). *See also Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wash.App. 719, 732–33, 741 P.2d 58 (1987).

The Exchange argues that there is nothing unfair about its retaining the funds that it generated. But the Exchange admits to knowing of the provisions against sale of Fly–Write tickets and counseling its customers in subterfuge. Thus this Court concludes that the Exchange should not in good conscience profit from these activities.

Northwest has also moved for a determination of liability under fraud, conspiracy to commit fraud and interference with contract premised on the same facts which support this Court's determination of liability under the CPA. These additional theories, however, involve issues of fact and are not appropriate for summary judgment.

The Court's determination of liability would generally obviate any need to consider plaintiff's other theories of liability. In this instance, however, there remain issues of fact on plaintiff's RICO claim with its potential for treble damages. Additionally, the Exchange's affirmative defenses remain issues of fact which could limit any damages to the period following filing of this suit.

It would be inappropriate to determine at this stage of the proceedings just what the measure of damages should be.[4] Suffice it to say that the Court has concluded that Northwest has been damaged. The Exchange is liable to Northwest under the CPA and the doctrine of unjust enrichment in an amount to be determined.

## CONCLUSION

The Ticket Exchange's motion for summary judgment is DENIED. Northwest Airlines' motion for partial summary judgment is GRANTED IN PART, with the Court concluding Northwest is entitled to an injunction and that liability exists under the Washington Consumer Protection Act and the doctrine of unjust enrichment, with damages to be determined.

---

**3.** The *Bitterman* Court also recognized the validity of injunctive relief in similar circumstances:

From the nature and character of the nontransferable tickets, the number of people to whom they were issued, the dealings of the defendants therein and their avowed purpose to continue such dealings in the future, the risk to result from mistakes in enforcing the forfeiture provision, and the multiplicity of suits necessarily to be engendered if redress was sought at law,—all establish the inade-

quacy of a legal remedy and the necessity for the intervention of equity.
207 U.S. at 225, 28 S.Ct. at 98.

**4.** As noted above, the Ninth Circuit has suggested several. Additionally, Northwest has argued that it is entitled to a full fare payment for every ticket sold, following *Boston & Lowell Railroad Co. v. Proctor*, 1 Allen 267, 268 (Mass.1861); or alternatively it is entitled to the amount the Exchange received from the sale of the tickets.