[Civ. No. 13535. Third Dist. July 18, 1973.]

DEL PASO RECREATION AND PARK DISTRICT et al.,
Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF SACRAMENTO COUNTY et al.,
Defendants and Respondents.

484

## COUNSEL

Benjamin D. Frantz for Plaintiffs and Appellants.

John B. Heinrich, County Counsel, and Robert S. Shelburne, Deputy County Counsel, for Defendants and Respondents.

## OPINION

JANES, J.—Plaintiffs appeal following a judgment of dismissal entered after the trial court sustained, without leave to amend, defendants' general demurrer to plaintiffs' second amended complaint. The action, brought pursuant to Government Code section 56008,[1] attacks the validity of a reorganization of recreation and park districts within a defined geographic area of Sacramento County. The reorganization of districts was accomplished under the District Reorganization Act of 1965 (Gov. Code, § 56000 et seq., sometimes hereinafter referred to as the "Act"). One of the results of reorganization was the detachment of a portion of plaintiff Del Paso Recreation and Park District ("Del Paso") and annexation of the detached area to defendant Citrus Heights Recreation and Park District ("Citrus Heights").

Fairly summarized, together with matters which we may judicially notice, the second amended complaint (with its numerous attachments and exhibits) discloses the following: Del Paso was organized in 1959 under article 1, chapter 4, division 5 (§ 5780 et seq.) of the Public Resources Code as an "autonomous district" (governed by its own elected board of directors); the district contains nonresident landowners and voters; plaintiff James D. Wheat, Jr., is a resident of and property owner in

---

[1] All code references herein are to the Government Code unless otherwise specified.

Del Paso, and also president of its board of directors. Citrus heights is a recreation and park district organized under a predecessor act—article 1, chapter 3, division 5 (former §§ 5400-5428) of the Public Resources Code. Unlike Del Paso, Citrus Heights chose not to have a separate board of directors; its governing body is the Sacramento County Board of Supervisors. (See Pub. Resources Code, § 5781.4.) At all times here relevant the "principal act" governing both districts has been article 1, chapter 4, division 5 (§ 5780 et seq.) of the Public Resources Code.

Plaintiffs duly allege the existence and qualifications of defendants Board of Supervisors of the County of Sacramento ("Board") and the Sacramento Local Agency Formation Commission ("LAFCO").

Pursuant to the District Reorganization Act of 1965 the Board, on June 18, 1969, adopted Resolution No. 69-459, making application to LAFCO for a reorganization of recreation and parks districts within a defined geographic area of Sacramento County, including a proposal to detach the area here contested from Del Paso and to annex that territory to Citrus Heights.

On September 16, 1969, LAFCO established, by resolution, a reorganization committee which included representatives from the various recreation and park agencies within the area proposed for reorganization, including Del Paso; LAFCO directed the reorganization committee to study, report on and make recommendations on the plan for reorganization contained in the Board's Resolution No. 69-459.

Pursuant to statutory mandate (§§ 56220-56236), the reorganization committee made its study, which included several alternative plans of reorganization. One plan of reorganization studied, and ultimately preferred by most committee members (the "majority" plan), included a recommendation that the boundaries of Del Paso presently remain unchanged; another plan (the "minority" plan) studied by the committee recommended detachment of specified territory from Del Paso and annexation of that portion to Citrus Heights. A staff report of the reorganization committee recommended to LAFCO the adoption of the minority plan, calling for the detachment and annexation here in question. The staff report accurately described the boundaries of the proposed detachment and annexation.

Upon receiving the full report of the reorganization committee, LAFCO noticed a public hearing upon the proposal, in accordance with the provisions of section 56262. Both plaintiff Wheat, in his capacity as a director

of Del Paso, and Del Paso itself, as an affected district, received written notice of the planned hearing. The notice of hearing advised of the filing of the "report and recommendation" of the reorganization committee and afforded all interested persons an opportunity to be heard.

At the hearing, and several continuances thereof, testimony was taken and oral and written protests were received and considered by LAFCO bearing upon the efficacy of the alternative plans of reorganization. Thereafter, on September 22, 1970, LAFCO adopted Resolution No. LAFC-216 approving a reorganization which included the detachment and annexation of which plaintiffs complain. The particular detachment and annexation are only two of fourteen changes of organization included in and contemplated by Resolution No. LAFC-216. The resolution recites, as a reason for reorganization of the territories, the need "to permit the establishment of logical and feasible boundaries and service areas for [the geographic area under study], so that the residents within the affected territories may be provided with adequate and economical local park and recreation services." Resolution No. LAFC-216 purported to set out the correct legal descriptions of the multiple changes of organization, designated Board as the "conducting *district* [*sic*]," and directed the Board "to initiate reorganization proceedings involving annexations and detachments in accordance with" the LAFCO resolution.

Pursuant to section 56430, the Board on October 26, 1970, adopted a resolution initiating proceedings for the proposed reorganization, setting a public hearing on the matter before the Board. Notice of the hearing was given by publication and posting as required by section 56431, and by mail to all the affected public agencies, including Del Paso and Citrus Heights, as provided in section 56432. Although subdivision (a) of section 56432 requires that mailed notice of hearing must be given to "[a]ll landowners owing land within any territory proposed to be formed into or to be annexed to or detached from (i) a benefit district, or (ii) an improvement district within any district," the Board did not mail notice to each landowner within the affected territory because the Board did not deem either Del Paso or Citrus Heights to be a "benefit" or "improvement" district within the meaning of sections 56025, 56043, or 56432, subdivision (a).

At the public hearing on December 14, 1970, the Board considered the resolution adopted by LAFCO, heard protests, and determined, pursuant to the criteria set forth in section 56438, that less than 25 percent of the landowners and voters had filed written protests to the proposed

reorganization. On that date, however, the Board declared a preference to submit the question of detachment of the territory from Del Paso to the voters of that district in a confirmatory election. The complaint further alleges that Del Paso "relied upon said action."

Thereafter, following communication between the Board and LAFCO, there developed a disagreement between those two entities as to the manner in which the voting franchise would be exercised, i.e., as to which district's voters, or whether voters of both districts would be permitted to vote in the proposed confirmatory election. Consequently, by Resolution No. 71-184, adopted March 29, 1971, the Board asserted and exercised its power under the District Reorganization Act of 1965 without extending the voting franchise and without calling a confirmatory election. The Board by that resolution reiterated its finding of the insufficiency of protests to require an election, and ordered consummation of the multiple reorganization (including the Del Paso-Citrus Heights detachment and annexation) without a confirmatory election.

On April 20, 1971, there was filed with the Secretary of State a certificate of completion recognizing the detachment and annexation here in question. The certificate of completion recited the same legal description of the Del Paso-Citrus Heights detachment and annexation set out in LAFCO Resolution No. LAFC-216. At no time during any of the proceedings did plaintiff Wheat or Del Paso, in the manner required by section 56430, subdivision (f), complain of any inaccuracy in the description of the territory to be detached from Del Paso and annexed to Citrus Heights.

Plaintiffs assign numerous errors and irregularities in the procedures taken during the reorganization proceedings, all of which—they urge on appeal—impaired the proceedings and require invalidation of the reorganization. We will refer to other matters pleaded during the discussion of several of plaintiffs' contentions. We turn first, however, to the statute and a brief discussion of its need and purpose.

### District Reorganization Act of 1965

The constant pressures of population growth and community expansion in California had brought, by 1963, a confusing maze of varied and often conflicting statutory provisions applicable to the state's special districts. Aware of the complexities presented in the consolidation and dissolution of unnecessary and obsolete districts, and—even more importantly—of

the barriers facing districts which were functioning well but contemplated necessary organizational changes in response to future community needs, the Legislature provided in 1963 for a broad committee study of the need for uniform procedures for special district consolidation, dissolution, detachments, and annexations. (See, 1 Assem.J. Appendix (1965) Municipal and County Government, pt. II, pp. 39-42.)

The study committee made findings and drew conclusions which are helpful to an understanding of the intent behind the act and the particular provisions thereof which govern proceedings such as those undertaken in the case at bench.[2] The committee reached the following conclusion: "[T]here is a general need for uniform procedures governing reorganization of special districts. . . . legislation to effect this goal would be feasible." (*Id.* at p. 42.) In spite of the difficulties presented in drafting such a provision, the committee was impressed by the support for the concept of a single, district reorganization statute.[3] The enactment of the Act reflects the Legislature's adoption of that concept.

Many of the provisions of the Act are relevant to the proceeding before us, but only a few are critical and dispositive of the issues here. In addition to providing that the Act shall be "the sole and exclusive authority and procedure for the initiation, conduct and completion of changes of organization and reorganization" of affected districts (§ 56001), the act details at length the procedures to be taken when any such action is contemplated. The provisions of the Act are dispositive of most of the contentions raised by plaintiffs. Since plaintiffs raise but one constitutional question, their contentions must therefore be taken as directed to the

[2] The committee found (Finding No. 4), as we have emphasized above, that "the existing special district enabling statutes do not provide uniform or simple methods by which such districts may be dissolved, consolidated, etc., when it may be appropriate to do so," and that (Finding No. 5) "[i]n addition to preventing adjacent districts from merging or otherwise reorganizing to meet community problems, existing special district laws also operate to perpetuate obsolete or inefficient districts. In some cases statutory anachronisms have prevented dissolution of inoperative districts; in others they have provided residents and taxpayers with no effective means to overcome the reluctance of vested interests to relinquish favored sinecures." (1 Assem.J. Appendix (1965) Municipal and County Government, *supra*, pt. II, p. 39.)

[3] "A proposed District Reorganization Law has been developed to provide a uniform method of effecting organizational change for virtually all types of districts. The proposed District Reorganization Law has been drafted in such a way that special districts may be kept responsive to the needs of the voters, the taxpayers and the community. In this respect it represents another tool by which local citizens may apply home rule principles to the complexities of the state's growing urban communities." (*Id.* at p. 40.)

wisdom of the statutory enactment. Their arguments, therefore, are more properly directed to the Legislature than to the courts. We turn, seriatim, to those contentions of plaintiffs which require discussion.

*Were the Voters in Del Paso Impermissibly and Unconstitutionally Denied the Right to Vote on the Detachment and Annexation?*

■ Plaintiffs contend, in reference to the language of their complaint, that "The voters and landowners in the plaintiff district were deprived of the right to have any voice in the detachment of the territory in litigation; and that would therefore appear to violate the 'one person, one vote' rule enunciated in *Burrey* v. *Embarcadero Municipal Improvement District* (1971) 5 Cal.3d 671 (97 Cal.Rptr. 203). . . ." Additional authorities are cited in support of the proposition that if the 1965 Act permits (as part of a reorganization) a detachment of territory from a recreation and park district without an election held in the territory proposed for detachment, the Act is unconstitutional.

The rationale underlying *Burrey*[4] has absolutely no relevance to the present case. We are not here faced with a situation in which the vote (assuming, indeed, a sufficient showing of protest under § 56438) was improperly denied qualified voters, but rather, a case in which the Board was permitted to conduct the reorganization without calling an election. (§§ 56438, 56439.)

Plaintiffs do not challenge the provisions of section 56438, which permits the Board to order a reorganization without an election if sufficient written protests are not filed at or before the hearing. Section 56438 permits such implementation by the Board if protests are filed by less than 25 percent of the landowners *and* 25 percent of the qualified voters. Clearly, therefore, written protests filed by a larger percentage than the statutory minimum of the voters qualified *by residence* could force such an election upon the Board before approval of a reorganization.

---

[4]In *Burrey,* the Supreme Court had before it the constitutional validity of the elections provisions of the Embarcadero Municipal Improvement District Act (Stats. 1961, First Ex. Sess. 1960, ch. 81, p. 441), as those provisions governed election of the board of directors of the district. The court held, inter alia, that the statutory limitation of the vote to landowners in a district exercising general municipal powers was a denial of equal protection to non-landowning residents of the district. (5 Cal.3d, *supra,* pp. 681, 684.)

*Were Notice Requirements Violated by the Failure of Notice to
Del Paso That Its Boundaries Might Be Changed in the
Notice Given Del Paso of the June 16, 1970,
Hearing Before LAFCO?*

Plaintiffs argue that the notice of the June 16, 1970, meeting before LAFCO (at which hearing LAFCO considered the recommendations of the reorganization committee) did not impart any notice that Del Paso's boundaries might be changed, and therefore—since plaintiffs were not put on such notice—that there was no reason or opportunity for the filing by plaintiffs of a written protest against any detachment of territory.

The contention is untenable. The argument is grounded upon the fact that the resolution adopted by the Board, making application to LAFCO for the reorganization study, recited that the reorganization would be made pursuant to the recommendations of the reorganization committee appointed to study the proposal. The contention, however, ignores a relevant provision of the Act and the language of the notice of that hearing. Section 56270 expressly provides that LAFCO may consider and approve or disapprove *any* plan which comes out of the reorganization committee; it does not bind LAFCO to accept the majority recommendation. Secondly, the terms of the notice admittedly received by plaintiffs did not include the content of any proposal, majority or minority; rather, it referred those to whom it gave notice to the executive officer of LAFCO, where the report and recommendation of the reorganization committee were stated to be available for examination "by any interested person for further particulars."

*Does the Incomplete Description of the Detached Area
Render the Reorganization Fatally Defective?*

Plaintiffs alleged, and it is a fact that the property sought to be detached from Del Paso was and is imperfectly described in that the westerly boundary of the parcel was omitted from the legal description.[5]

---

[5]The legal description is set out as follows:

"Beginning at the intersection of the Southeasterly right of way line of the Southern Pacific Railroad and the centerline of Palm Avenue; thence easterly along the centerline of Palm Avenue to the centerline of Auburn Boulevard; thence northeasterly along the centerline of Auburn Boulevard to the centerline of Manzanita Avenue; thence southerly along the centerline of Manzanita Avenue to the centerline of Madison Avenue; thence westerly along the centerline of Madison Avenue to the point of beginning."

However, no one could have been misled by the erroneous description. The error lies in the fact that the legal description does not "close." Taken literally, its terminus is infinity. In fact, however, a westerly course on Madison Avenue bisects the right-of-way line of the Southern Pacific Railroad at a point southerly of the point of beginning; the western boundary of the area to be detached (i.e., the railroad right-of-way), was simply omitted from the description. However, the reorganization plan contemplated the detachment of the northern portion of Del Paso, and the western boundary of Del Paso prior to the reorganization was the same as the western boundary of the north portion detached from Del Paso. Plaintiffs were at all times aware that this was so, as evidenced by the fact that they pled the staff report of LAFCO's executive officer which correctly described the boundaries of the territory to be detached from Del Paso.

In connection with the description error, as Citrus Heights points out, plaintiffs do not plead that they had filed a written protest within the meaning of section 56007, which requires such filing to avoid waiver of an alleged defect or irregularity in the proceeding. Sections 56267 and 56434, respectively, provide for hearing and consideration of protests before LAFCO and the Board. Plaintiffs concede in their reply brief that they made no such protest, and since the irregularity in the parcel description could have been remedied upon protest, plaintiffs' contention must fail.

### *May Territory Be Detached From Del Paso and Annexed to Citrus Heights Without the Consent of Del Paso?*

██ Del Paso predicates the requirement of its consent to such action on section 56004, which provides as follows: "56004. It shall not be necessary for the principal act of any district to adopt or incorporate this division by reference and any change of organization or reorganization provided for by this division is authorized to be made by or with respect to any district. Except as otherwise provided in this division, in any change of organization or reorganization the principal act shall govern as to any provisions therein pertaining to boundaries, to contiguity or noncontiguity of territory, to the incorporated or unincorporated status of territory and to the overlapping of territory of a district with the territory of another district or city. Unless otherwise provided by the principal act, *any territory annexed to a district* shall be contiguous thereto and *shall not be a part of another district formed under the same principal act without the consent of such other district.*" (Italics added.)

Since both Del Paso and Citrus Heights were formed and function generally under the same principal act, Del Paso points also to section 5785 of the Public Resources Code, which provides in pertinent part: "Any . . . territory . . . may be annexed to a recreation and park district, if the territory is contiguous to such district and *is not included in any other recreation and park district."* (Italics added.)

On the issue of the consent requirement, both sides rely upon the case of *Fuller* v. *San Bernardino Valley Mun. Wat. Dist.* (1966) 242 Cal. App.2d 52 [51 Cal.Rptr. 120]. *Fuller* involved a controversy between an existing municipal water district ("old district") and the proponents of a new municipal water district ("new district") over a parcel of land not included in the old district. After receiving a favorable report from the county Boundary Commission, a petition was circulated by proponents of the new district, and the county registrar of voters certified the adequacy of the signatures and presented the petition to the board of supervisors. An action was filed, however, by an owner of land in the proposed new district and the board was enjoined pendente lite from calling an election on the question of formation of the new district. While the landowner's action was pending, the old water district initiated proceedings for annexation of the parcel of land in question.

For our purposes, the principal question at issue in *Fuller* was whether, in view of the old district's proceeding for annexation, the county board of supervisors had priority of jurisdiction to conduct the formation proceedings of the proposed new district.

Citing section 33 of the Municipal Water District Act of 1911 ([Deering's Wat. Code, Act 5243] Stats. 1941, ch. 26, p. 463, § 12),[6] the old district contended—as to municipal water districts—that "overlapping territory has long been sanctioned by the Legislature." (242 Cal.App.2d at p. 62.) It sought, therefore, to go forward with its annexation proceeding, notwithstanding the earlier presentation, to the board of supervisors, of the proposal for a new district which would encompass the parcel of land sought by both groups. The Court of Appeal answered the old district's contention by drawing attention to the 1955 amendment of section 33 which provided (Stats. 1955, ch. 1318, p. 2401, § 9): "Except for forma-

[6]"The inclusion in, or annexation or addition to, a municipal water district, of the corporate area of any public corporation or public agency, shall not destroy the identity or legal existence or impair the powers of any such public corporation or public agency, notwithstanding the identity of purpose, or substantial identity of purpose, of such municipal water district."

tion proceedings commenced before the effective date of the amendments to this act made by the 1955 Regular Session of the Legislature, no public corporation or public agency having identity of purpose or substantial identity of purpose shall be' formed partly or entirely within a municipal water district existing under this act *without the consent* of such municipal water district." [Fn. omitted.] (Italics added.) (242 Cal.App.2d at p. 63.)

The *Fuller* court decided that, since a valid petition for formation of the new district had been filed with the board of supervisors prior to the subsequently initiated annexation proceedings by the old district affecting the disputed territory, the board of supervisors had jurisdiction to complete the proceedings for formation of the new district. Based on the 1955 amendment above quoted, the court pointed out that "consent is a condition precedent to the formation of a new district containing in whole or in part territory of an existing district or of the annexation by a district of a portion of another district. Absent such consent the proceedings are void. [Citations.]" (242 Cal.App.2d at p. 63.)

The court closed the "consent" portion of its opinion with the following dictum, heavily relied upon by Del Paso in the case at bench: "It is also noted that although the consent requirement of section 71033 of the Water Code [the 1963 codification of the consent sentence in § 33 of the Act of 1911] relating to municipal water districts was repealtd in 1965, the District Reorganization Act of 1965 (Gov. Code, § 56000 et seq.) now makes that requirement applicable to all special districts, unless otherwise provided by the principal act. (Gov. Code, § 56004.)" (242 Cal. App.2d at p. 65.)

Analysis of the District Reorganization Act of 1965 as a whole persuades us that the dictum of *Fuller* is not determinative of the consent issue in the case at bench. There can be no question that the consent requirement expressed in the final sentence of section 56004[7] is applicable to instances of simple boundary changes and annexations or detachments affecting (as in *Fuller*) but two contiguous districts. Certainly such a proposal ought to and would, under the statute, require the consent of the district losing territory.

The Act, however, contemplates and recognizes under other provisions more thoroughgoing proposals, denominated as "organization" and "reorganization." (See, e.g., §§ 56001, 56028, 56068, 56210, 56221, 56291.)

---

[7]"Unless otherwise provided by the principal act, any territory annexed to a district . . . shall not be a part of another district formed under the same principal act *without the consent of such other district.*" (Italics added.)

In proposals of more sweeping variety such as that here presented, involving 14 changes in organization (affecting several county service areas, a school annexation and detachment, a park agency reorganization, and numerous annexations and detachments of uninhabited territory to and from Del Paso and Citrus Heights, as well as from another recreation and park district) a potential would exist for partial or complete frustration of the legislative purpose inherent in the Act if one district were vested with power to hinder or disrupt the entire reorganization plan by withholding consent to its loss of territory. In our view, therefore, the consent requirement of section 56004 is necessarily qualified by and must be read in light of other relevant provisions of the Act, and, as so read, is inapplicable to a reorganization of the type here undertaken.

Only by such interpretation of the legislative intent may the complexities presented in major reorganizations be resolved in the community and regional interest, and necessary organizational changes be kept responsive to future needs. Undoubtedly the need for such necessary breadth in the statutory scheme was one of the reasons why the Legislature vested in the board of supervisors the authority to act as the "conducting district" in reorganizations of the magnitude here undertaken (§ 56291; see, *infra.*) We hold, therefore, that Del Paso's consent was not necessary to the detachment and annexation of the affected portion of its territory to Citrus Heights.

*Was the Board Improperly Designated as the "Conducting District,"
or Should Del Paso Have Been So Designated?*

Del Paso's contention that it should have been designated as the "conducting district" rests upon its interpretation of section 56034 and a claimed ambiguity in section 56291.

Section 56034 defines "conducting district" to mean "a district whose board of directors is empowered to conduct a proceeding for an annexation, detachment or minor boundary change pertaining to that district." Section 56291 provides: "A district whose boundaries would be changed as a result of a proposed annexation, detachment or minor boundary change shall be the conducting district and proceedings for any such annexation, detachment or minor boundary change shall be taken by the board of directors of such district. The *board of supervisors* of the principal county shall take proceedings for *all other changes of organization* and *any reorganization,* including a reorganization providing, among other things,

for any annexation, detachment or minor boundary changes." (Italics added.)

It is Del Paso's position that since both sections provide that the conducting district shall be the district losing territory in a detachment, an ambiguity is presented by the portion of section 56291 which provides that the Board shall be the conducting agent for "any reorganization." We find no real ambiguity. Del Paso's construction of section 56291 conflicts with the expressed intent of the Legislature. To adopt the contention would require each district which stood to lose territory in a reorganization such as here envisioned to hold separate proceedings on the portion of the proposal by which it was affected.[8]

The splintered proceedings contemplated by Del Paso would not only stultify expressed legislative intent, but also the intent of the present reorganization (i.e., "the establishment of logical and feasible boundaries and service areas for the Citrus Heights-Orangevale study area, so that the residents within the affected territories may be provided with adequate and economical local park and recreation services"), since each affected district would have the opportunity to pass on its own portion of the proposal. Undoubtedly it was the Legislature's intent to permit the Board to conduct such multiple proposals for reorganization in order to insure that special districts accomplish, as economically as possible, the purposes for which they were established.

Under the clear language of section 56291 (and the definition of "reorganization" contained in section 56068), LAFCO properly designated the Board as the conducting agency to take proceedings for the reorganization, despite the fact that one aspect of the reorganization involved the detachment of a portion of Del Paso.

*Were Landowners Within the Area Proposed to Be Detached*
*From Del Paso Entitled to Mailed Notice of the*
*Proceedings Before the Board?*

█ Del Paso's contention that the Board failed to comply with proper notice requirements is predicated upon its assumption that a recreation and park district is a "benefit" district. It therefore claims that the county clerk was obligated to mail notice to each landowner within the area of Del Paso proposed to be detached, notifying the landowners of the hearing

---

[8]Review of the reorganization resolution here in question shows that there would have to be five or six such separate proceedings in the present case.

before the Board. (See § 56432.) It is further argued that the Board was required to, but did not make a finding that the lands detached from Del Paso would not be benefited by remaining part of Del Paso. (See § 56436.) Since it is clear beyond question that a recreation and park district is not a benefit district within the meaning of the applicable statutes, Del Paso's contention fails.

Section 56025 defines "benefit district" as a "district containing lands which are, or will be, benefited by their inclusion within such district, the owners of such lands being entitled, under the laws or Constitutions of the state or the United States, to notice and hearing prior to the inclusion of such lands within the district." A recreation and park district, on the other hand, is specifically designated by the Act as a "district of limited powers."[9]

In *Firestone Tire & Rubber Co.* v. *Board of Supervisors* (1958) 166 Cal.App.2d 519, 528-529 [333 P.2d 378], the court had occasion to discuss the differences between districts of limited powers and "benefit" districts. "If they [there, fire protection districts] are but public corporations formed as an agency of the state with limited powers to perform a function of the state, i.e., are public corporations in the nature of municipalities, then the annexation of territory does not deprive the owners of the property annexed of that property or of any interest therein or charge them with the payment of any assessment for the benefit of other persons within the territory annexed, and they are not, as a matter of constitutional right, entitled to notice or hearing. If, on the other hand, the District is in the nature of a special assessment district created for the primary purpose of assessing upon private lands the benefits to be derived from a public improvement for the construction of which the district is formed, persons whose lands are within the proposed district are deprived of their property without due process of law unless they have proper notice and an opportunity to be heard upon the question of whether their property will benefit and if so the extent of those benefits." (See also discussion in *In re Orosi Public Utility Dist.* (1925) 196 Cal. 43, 52-53, 60-61 [235 P. 1004].)

In the event Del Paso were a benefit district, the Board *would* have been required to provide landowners of the district with mailed notice of its reorganization proceedings. (§ 56432, subd. (a).) Additionally, if Del Paso and Citrus Heights were benefit districts within the meaning of the

---

[9] "'District of limited powers' means an airport district . . . fire protection district . . . recreation and park district, . . ." (§ 56040.)

Act, the Board would have been further required (a) to exclude from the reorganization any land proposed to be detached from Del Paso and annexed to Citrus Heights which the Board finds will not be benefited by becoming a part of Citrus Heights, and (b) to exclude any land proposed to be detached from Del Paso which the Board finds will be benefited by remaining a part of Del Paso. (§ 56436.) The question raised by plaintiffs is therefore fundamental, and of vital importance in the processing of any boundary change proposal. Here, however, both statutory and case law[10] compel rejection of plaintiffs' contention. Since both affected districts are districts of limited powers, the Board was not required to comply with the requirements of section 56432, subdivision (a) and section 56436. Plaintiffs were given all the notice the law required of the Board, i.e., written notice to Del Paso as a "subject district" (§ 56432, subd. (b)) and published and posted notice required by section 56431.

### Estoppel; Did the Board Act Improperly in Ordering the Reorganization Without an Election?

■ Del Paso contends that the Board acted improperly in that it "determined that the detachment of any such territory from [Del Paso] . . . would be submitted to the voters of said district"; that [Del Paso] "relied upon said action," and that subsequently the Board "purported to adopt a certain resolution detaching from [Del Paso] . . . and annexing to [Citrus Heights] that certain area . . . without submitting the matter to the voters of [Del Paso]."

In our opening summary of plaintiffs' second amended complaint we have referred to the allegations that at the public hearing on December 14, 1970, the Board, after considering the resolution adopted by LAFCO, heard protests and determined under applicable criteria that there had not been sufficient protests filed to require an election on the proposed organization. Notwithstanding that finding, the Board, after the hearing on that date, expressed its preference for the calling of an election by instructing county counsel "to prepare a formal resolution ordering the reorganiza-

---

·[10]In addition to the cases we have cited, there are many other cases recognizing and explicating the fundamental differences between (a) districts which are but public corporations formed as agencies of the state with limited powers to perform a function of the state, i.e., quasi-municipal corporations, and (b) districts in the nature of special assessment districts created for the primary purpose of assessing upon private lands the *benefits* to be derived from a public improvement or project for the construction of which the district is formed. (See, *Fallbrook Irrigation District* v. *Bradley* (1896) 164 U.S. 112 [41 L.Ed. 369, 17 S.Ct. 56]; *Palos Verdes Library Dist.* v. *Mc-Clellan* (1929) 97 Cal.App. 769 [276 P. 600]; *Arnold* v. *Newhall County Water Dist.* (1970) 11 Cal.App.3d 794 [96 Cal.Rptr. 894].)

tion subject to a confirmatory election and to report back to the Board of Supervisors with said resolution for adoption on December 28, 1970." It is not alleged that the proposed resolution calling an election was ever presented to or acted upon by the Board; plaintiffs' complaint tacitly admits that (undoubtedly because of disagreement with LAFCO over the extent of the franchise) the Board changed its original preference and by resolution determined that it would not call for a confirmatory election. The latter course is expressly authorized by section 56438.

Under the applicable statutes, the Board must hold a public hearing on any such proposed plan of reorganization (§§ 56430, 56433) and ultimately adopt a resolution (a) disapproving the reorganization, (b) ordering the reorganization into effect without a confirmatory election, or (c) ordering the reorganization into effect subject to a confirmatory election to be held within the affected territory. (§§ 56439, 56440.)

As we have seen, Del Paso asserts that it "relied" upon the Board's initially expressed preference for a confirmatory election, thus in effect raising the issue of estoppel.

■ The elements of an estoppel are: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

■ Where a party relies upon estoppel, he must plead all of the facts relied upon to establish the elements constituting the doctrine. (*Windsor Mills* v. *Richard B. Smith, Inc.* (1969) 272 Cal.App.2d 336, 341 [77 Cal.Rptr. 300].) Here, plaintiffs have failed to plead facts sufficient to establish the first three requisite elements of an estoppel. Nor does the mere allegation that Del Paso "relied" upon the Board's initially expressed preference for a confirmatory election aid the claim that a cause of action is pleaded. Even had an election been called, Del Paso (as a district) could not have participated therein, nor—contrary to Del Paso's contention—could all the votors of Del Paso have taken part in such an election. Under section 56440, subdivision (c), only those persons eligible to vote in the area subject to detachment would have had the right to participate in the election. In any event, in the circumstances pleaded, Del

Paso had no right to have the issue put to an election, and has totally failed to plead facts supporting the elements of an estoppel.

Discussion of other issues raised by plaintiffs is unnecessary to resolution of the controlling issues we have examined. The thrust of plaintiffs' attack is that the procedures followed in the questioned reorganization were improper and, in one instance, unconstitutional. In no respect does the second amended complaint satisfactorily raise issues of unconstitutionality or invalidity. In the only instance of irregularity—imperfect description of the detached lands—the pleadings filed disclose plaintiffs' awareness, at all times, of the precise area proposed for detachment and annexation, and in addition, they must be deemed to have waived their right to complain of any such defect. In view of the fact that plaintiffs have not, after three attempts, pled facts which present a justiciable issue, the trial court properly sustained the demurrer, without leave to amend.

The judgment of dismissal is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.

A petition for a rehearing was denied August 7, 1973, and appellants' petition for a hearing by the Supreme Court was denied September 26, 1973.