**CONTINENTAL AIRLINES, INC., a Delaware Corporation, debtor-in-possession, Plaintiff–Appellee,**

v.

**INTRA BROKERS, INC., a Missouri Corporation, Defendant–Appellant.**

No. 92–56103.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1993.

Decided May 16, 1994.

Wendy C. Lascher, Susan B. Lascher, Lascher & Lascher, Ventura, CA, Ernst Lipschutz, Van Nuys, CA, for defendant-appellant.

W. Chelsea Chen, Belcher, Henzie & Biegenzahn, Los Angeles, CA, for plaintiff-appellee.

Before: NOONAN, FERNANDEZ and KLEINFELD, Circuit Judges.

Opinion by Judge KLEINFELD.

KLEINFELD, Circuit Judge:

The issue in this case was whether Continental Airlines, which had not previously enforced an anti-assignment provision on discount coupons, could begin enforcing it and obtain an injunction. We hold that it could, and affirm.

### Facts

Continental published discount coupons in 1991 and 1992. They were redeemable with Continental for various discounts, such as $100 off on a roundtrip airfare of $351 or more. All the coupons had language printed on the back restricting transfer, saying they "cannot be bartered, sold or redeemed for cash." Intra acquired the coupons and sold them to travel agents, for resale to their customers. Intra's advertisements to the trade promoted the coupons as a way that travel agencies could sell airplane tickets for less than competing agencies, by buying Continental coupons from Intra and selling them to their customers.

Continental wrote to Intra on August 20, 1991, and said that although it had not enforced its rule against transfer of the coupons before, it would begin to do so with the 1992 coupon book. Intra's president, Jerry Weiner, said in his declaration that the author of Continental's letter, vice president Jim Stevens, had told him that travel agencies without access to the coupons had been complaining, the letter was just "a smoke screen" to placate those travel agencies, and he did not think Continental could enforce the restrictions. Mr. Stevens had previously sent Mr. Weiner a list of travel agencies which were having trouble getting the coupons and encouraged Intra to sell coupons to travel agents in these cities. Mr. Stevens said he thought the coupons greatly benefitted Continental by improving its passenger loads. In March of 1992, after the August letter, Mr. Stevens again told Mr. Weiner that the coupons were generating business for Continental.

An independent salesman in the travel industry, Jack Moss, who sold Continental coupons to travel agents for Intra, said in his declaration that in 1992, long after the August 1991 letter, Continental officers had told him they thought Intra sales of the coupons benefitted Continental. At a meeting with three Continental people, including Vice President Stevens, in March of 1992, he and Jerry Weiner of Intra discussed the coupons, and the Continental people expressed no objection to Intra's sales. Mr. Stevens mentioned just before the meeting that his real concern was that travel agencies should not advertise Continental fares below Continental's posted rates. Mr. Stevens said that the coupons were Continental's bread and butter, and that Continental would not threaten the $400 million in business generated by the coupons. In subsequent discussions, other Continental people told Mr. Moss that Continental's concern was with agencies advertising fares below Continental official posted fares, and complaints from other travel agencies about availability of coupons in the quantities they sought. Intra filed the declarations of Weiner and Moss pursuant to Federal Rule of Civil Procedure 56(c). The district court, and we, assume the facts as so stated to be true for purposes of summary judgment.

In April of 1992, Continental's attorney wrote Intra, again demanding that Intra stop selling the coupons, and threatening "to take whatever steps are necessary" if they did not. Intra responded through its attorney that the restrictions on transfer were invalid, and refused to assure Continental that it would cease selling the coupons. This time Continental did not make reassurances that the letter did not mean what it said. Instead, Continental sued for damages, declaratory relief, and an injunction.

During the lawsuit, Intra refused to disclose how many coupons it had purchased, or how many it held in inventory. As the facts stand in the record, Continental wrote on the coupons and stated in a letter that they could not be sold, but assured Intra repeatedly that the condition would not be enforced, until April of 1992 shortly before it filed suit. Continental thought it benefitted financially from Intra's sales of the coupons in 1991 and 1992. Then in April of 1992, Continental changed its position and plainly advised Intra of the change. Intra refused to comply with the new Continental policy.

There was no evidence of harm or benefit to Continental on account of Intra's refusal to comply. No inference can be drawn with confidence as to whether the benefit from increased passenger volume would be greater or less than harm from reduced fares per passenger or discouragement of full posted fare passengers.

Nor was there any evidence of expenses by Intra in reliance on the old policy or harm to Intra from the change. Intra chose not to disclose any such evidence. The question, unaffected by proven injury to either side, is whether Continental was entitled to an injunction to begin enforcing its previously waived restriction on sale of the discount coupons.

The district court dismissed Intra's counterclaims for fraud, negligent misrepresentation, and interference with prospective economic advantage on the basis of federal preemption, without prejudice to refiling claims in the Department of Transportation. It

granted summary judgment to Continental on its claims for injunctive and declaratory relief. The permanent injunction commands Intra not to sell Continental coupons:

> Defendant INTRA–BROKERS, INC., and all those acting by, through, or in concert with said defendant are hereby permanently restrained and enjoined from engaging in the barter, trade or sale of those certain CONTINENTAL AIR-LINES discount travel coupons identified as either GOLD C coupons or as ENTER-TAINMENT COUPONS.

## Analysis

Although Continental's damages claims have not yet been adjudicated, Intra has appealed the injunction. We have jurisdiction under 28 U.S.C. 1292(a)(1). *Marathon Oil Co. v. United States*, 807 F.2d 759, 763–64 (9th Cir.1986). Though interlocutory, the injunction is permanent and final, not preliminary. We review the legal determination of whether the district court had the power to issue an injunction de novo, but review the district court's exercise of that power for abuse of discretion. *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 867 (9th Cir. 1992). Our jurisdiction extends to all matters "inextricably bound up" with issuance of the injunction, including Intra's affirmative defenses. *TransWorld Airlines, Inc. v. American Coupon Exch., Inc.*, 913 F.2d 676, 680 (9th Cir.1990). The dismissal of the counterclaims on grounds of preemption is not inextricably bound up with the injunction, so we do not have jurisdiction to review that interlocutory decision now. The district court considered those facts relating to the counterclaims which had a bearing on prospective injunctive relief, and so do we. Intra has not argued that declaratory relief was improper.

### 1. Timing.

Intra argues that the permanent injunction should not have been issued so early in the proceedings, on summary judgment, before the court had tried the issues on the affirmative defenses. Intra quotes language in *University of Texas v. Camenisch*, 451 U.S. 390, 395–96, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981), that when a district court grants a permanent as opposed to a preliminary injunction, "the parties will already have had their trial on the merits." But the authority does not stand for the proposition for which Intra submits it. *Camenisch* was explaining why "findings of fact and conclusions of law at the grant of a preliminary injunction do not bind the court at trial on the merits." *Id.* at 395, 101 S.Ct. at 1834. Intra also argues that the district court should not have granted the injunction without first deciding upon Continental's damages claims, and Intra's various defenses, that the restraint on alienation of the coupons violated California and federal law, waiver, estoppel, and unclean hands.

We see no illegality or abuse of discretion in deciding upon Continental's entitlement to injunctive relief separately from its claims for past damages. Nor need there be a trial on the merits, if there is no genuine issue of material fact to try. There is nothing novel about a permanent injunction issued on summary judgment rather than after trial. Such a procedure comports with Federal Rule of Civil Procedure 56. *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir.1980); 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2731, at 302 (2d ed. 1983) ("[I]f there are no triable fact issues and the court believes equitable relief is warranted, it is fully empowered to grant it on a Rule 56 motion.").

The district court, in the oral proceedings on the motion for summary judgment, considered the affirmative defenses. It held that they were preempted by federal law, barred by our decision in *TransWorld*, or were not factually supported. To the extent that some issues on the damages claims and affirmative defenses were unadjudicated, they did not need to be, because they had no bearing on prospective injunctive relief. Entitlement to damages did not have to be adjudicated for purposes of prospective relief. The damages issue was not "inextricably bound up" with the injunction, so we have no jurisdiction now to review the district court determination on that issue. *TransWorld*, 913 F.2d at 681.

2. Waiver and estoppel.

■ The affirmative defenses which Intra argues on appeal should have precluded summary judgment were waiver and estoppel. At least insofar as they went to future conduct, these defenses were inextricably bound up with issuance of the injunction. For that reason, rejection of these defenses on the merits, insofar as they applied to future conduct, was a "necessary predicate" to issuance of the injunction, *id.* at 680, and we review that rejection now.

Intra argues that Continental waived its right to enforce the non-transferability condition by its oral representations to Intra. Intra's evidence may show waiver prior to when its lawyer sent his demand on April 7, 1992. Even if, based on Continental's oral negation of the August 1991 letter, Intra had assumed that the April 1992 letter also did not mean what it said, such an assumption could not have survived the service of Continental's complaint in this lawsuit. The latest date to which waiver could possibly be proved, taking Intra's allegations as true, would be the date Intra received service of the summons and complaint in this action. *Id.* at 695.

Our de novo review of the uncontested representations does not support an inference of intentional relinquishment of the right to enforce the non-transferability condition for the indefinite future. According to Weiner and Moss, Continental told Intra that it did not mean what it said in the August 1991 letter. There is no evidence of Continental conceding that it would never commence enforcement of the condition in the future. The most favorable inference for Intra is that Continental decided that non-enforcement was to its commercial advantage until April 1992, but at that time decided commercial conditions no longer made it advantageous to waive the condition. No inference of permanent waiver for the future could reasonably be drawn from Continental's alleged representations. *Cf. Id.* at 696 n. 20.

■ The estoppel defense is based on our dictum, beginning "Of course, ..." relating to declaratory relief in our *TransWorld* opinion:

First, since equitable estoppel arises only when a defendant has, to his detriment, reasonably relied on a plaintiff's conduct or representations, the very fact that a lawsuit eventuates would seem to us, ordinarily, to remove the estoppel prospectively from the time the lawsuit was commenced. After all, a party who sues thereby manifests an unequivocal intention to enforce his rights, making further reliance unreasonable. Thus, while prior, reasonable reliance interests should be protected, it is difficult to argue that judicial protection should extend even to the subsequent, unreasonable reliance. Of course, if ACE could demonstrate that prior to the filing of the lawsuit it engaged in some sort of long-term reliance, involving capital expenditures or something more than merely continuing to broker TWA's coupons, then that reliance, if reasonable, might be protected even prospectively. However, ACE has neither made nor substantiated any allegations of such long-term reliance.

*Id.* at 695. The "of course" sentence is dictum, because *TransWorld* held that no estoppel barred the declaratory relief being discussed. Assuming without deciding that it is nevertheless a correct statement of law and applies to injunctive relief as well, we have examined the record de novo and determined that no such reliance was demonstrated.

Estoppel is an affirmative defense, for which the defendant bears the burden of proof. Fed.R.Civ.P. 8(c). When Continental moved for summary judgment, it became incumbent on Intra to produce evidence cognizable under Federal Rule of Civil Procedure 56(c) & (e) supporting the defense. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The only arguably supporting evidence was Mr. Weiner's statement in his affidavit that "Because of the assurances given to me and Continental's continued use of Intra Broker's services, Intra Brokers continued to acquire stocks of Continental coupons." This statement begs the question of whether Intra purchased the coupons for money or was able to "acquire" them at no charge, whether Intra still had any coupons in inventory when Continental's 1992 letter

or the summons and complaint was received, and whether Intra would suffer any injury if the injunction were granted to Continental. An estoppel requires a party to plead detrimental reliance and injury. *Del Paso Recreation & Park Dist. v. Board of Supervisors,* 33 Cal.App.3d 483, 109 Cal.Rptr. 169, 180–81 (1973). Had Mr. Weiner's affidavit established that Intra had, prior to filing of the lawsuit, "engaged in some sort of long-term reliance, involving capital expenditures or something more than merely continuing to broker [Continental's] coupons, then the reliance, if reasonable, might be protected prospectively." *TransWorld,* 913 F.2d at 695. For example, an injunction might be qualified by allowing Intra to sell, within a reasonable time, coupons it had purchased before receiving the letter or the summons and complaint, or conditioning it on Continental's buying them from Intra for what Intra had paid for them in reliance on Continental's representations. But Intra did not file evidence of such detrimental reliance.

During discovery, Intra sought a protective order against disclosure of information relating to any purchases or sales it made of the discount coupons, on the ground that disclosure would inappropriately interfere with its relations with customers. Intra refused to produce any information on how much it had spent on coupons and when, or how many coupons it had at certain times. Thus Intra knew, and neither Continental nor the court could know, the extent of any detrimental reliance and injury to Intra, yet Intra did not tell. Mr. Weiner's affidavit, in this discovery context, obscured more than it disclosed. So there was no "genuine" issue of fact regarding detrimental reliance and prejudice. We have no reason to doubt that Mr. Weiner's carefully drafted affidavit said what it meant and meant what it said, and no more. What it said alleged reliance, but omitted detriment and injury. For that reason, there was no genuine issue of fact regarding estoppel.

3. Appropriateness of equitable relief.

■ Intra argues that Continental did not demonstrate irreparable harm, so it was not entitled to an injunction. Irreparable injury is required for preliminary injunctions, but once actual success on the merits has been established, "a party is entitled to relief as a matter of law irrespective of the amount of irreparable injury which may be shown." *Western Systems,* 958 F.2d at 872. "[I]rreparable injury is not an independent requirement for obtaining a permanent injunction [as opposed to a preliminary injunction or temporary restraining order]; it is only one basis for showing the inadequacy of the legal remedy." 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2944, at 401 (1973).

■ Still, for equitable relief to be appropriate, there must generally be no adequate legal remedy. *Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 558 (9th Cir.1990). Intra argues that Continental has an adequate legal remedy: damages for financial losses from passengers' use of the coupons Intra sold. This same argument was made in *Bitterman v. Louisville & Nashville R.R. Co.,* 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171 (1907). There, the railroad issued non-transferable round trip discount tickets to New Orleans for the United Confederate Veterans Reunion and Mardi Gras. Brokers were buying and selling the return trip coupons. The court found the non-transferability provisions on the tickets enforceable. We treated *Bitterman* as authoritative for non-transferable frequent-flyer airline tickets in *TransWorld,* 913 F.2d at 686. *Bitterman* rejected the argument that the carrier had an adequate legal remedy, because the carrier would likely make many mistakes in trying to enforce the forfeiture of the non-transferable tickets, and too many lawsuits would be needed to redress the harm if an injunction were denied.

> From the nature and character of the non-transferable tickets, the number of people to whom they were issued, the dealings of the defendants therein and their avowed purpose to continue such dealings in the future, the risk to result from mistakes in enforcing the forfeiture provision and the multiplicity of suits necessarily to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy

and the necessity for the intervention of equity.

*Bitterman,* 207 U.S. at 225, 28 S.Ct. at 98. The district judge in the case at bar did not err in likewise rejecting Intra's argument.

 It is true that Continental did not demonstrate any financial harm. That has a bearing on the appropriateness of equitable relief, because the balance of hardships may generally be considered in exercising discretion whether to grant an injunction. 11 Wright & Miller, *Federal Practice & Procedure* § 2942, at 365–67; *Restatement (Second) of Torts* § 941 (1979).

The discount coupons would tend to increase Continental's volume, but decrease the average fare received. Brokering would naturally increase their use, by facilitating transfer from those who would waste them to those who would use them. Continental's revenue could be higher, lower, or the same, depending on how much the brokering affected volume by increasing the number of passengers flying, and how much it affected average price by increasing the percentage of passengers flying at a discount. There might be downward pressure on Continental's fares because of resentment of passengers paying full fare, if too many passengers were known to be flying at a discount. Continental might engender ill will among its customers if they were questioned about their coupons at the counter when they tried to check in. The effect on revenue of brokering would be hard to measure or prove, especially prospectively.

Even retrospectively, in a damages case, expert witnesses might well testify to contrary conclusions on whether revenue effects were caused by discounts, brokering, prices being too low or high, bad or good service, general market conditions, or any number of other factors. The economic analysis of the effect of brokering discount coupons is difficult and uncertain. Expensive accounting and economic analysis might be necessary. *See TransWorld,* 913 F.2d at 691–92; *American Airlines v. Christensen,* 967 F.2d 410, 416 (10th Cir.1992) (noting the difficulty of proving damages in adopting the "stowaway theory"); *Northwest Airlines, Inc. v. Ticket*

*Exch., Inc.,* 793 F.Supp. 976, 978–79 (W.D.Wash.1992).

This difficulty of establishing economic harm to Continental, lack of proof of damages, and possible immeasurability or unascertainability of harm, does not mean Continental was not harmed. In *Gilder v. PGA Tour, Inc.,* we said, "where the threat of injury is imminent and the measure of that injury defies calculation, damages will not provide a remedy at law." 936 F.2d 417, 423 (9th Cir.1991). Unlike a preliminary injunction, the permanent injunction presupposes an established right of Continental to control its discount coupons, not merely a probability of success on the merits. Under *TransWorld,* Continental was entitled to control whether its coupons were transferred. The difficulty and probable expense of establishing the amount of economic harm supports the proposition that damages would be an inadequate remedy, and so cuts in favor of equitable relief. *Gilder,* 936 F.2d at 423; *Restatement (Second) of Torts* §§ 944(1)(c) & (e).

The certain harm to Continental was to its power, not its purse. Whether Continental is right or wrong about the effect of coupon brokering on its profits, it sells the transportation services and it is entitled to make its own decisions about whether to give out discount coupons, and whether to make them transferable or nontransferable. Neither Intra nor the courts are entitled to substitute their business judgment for Continental's, under *TransWorld* and *Bitterman.* Nor should Continental have to spend money on accountants and economists to have to prove the amount of economic harm in order to preserve its control over its discount policies from Intra's interference. *See Restatement (Second) of Torts* § 944 cmts. d & f. There is certain harm to Continental's control of its own business, even though the harm to its profitability is unproven or perhaps immeasurable.

Intra argues that its past conduct did not justify an injunction. In support of this argument, however, it only claims that Continental waived or was estopped from asserting non-transferability, for the reasons discussed above. Intra does not make the argu-

ment, successful in *TransWorld,* that an injunction was "not necessary to ensure against future tortious conduct on its part—that there is no evidence that ACE will fail to respect the tariffs now that TWA's and the court's positions have been made clear." 913 F.2d at 697. This defense to an injunction responds to the petitioner's burden to show that there is a real danger that the act complained of will actually take place. 11 Wright & Miller, *Federal Practice & Procedure* § 2942, at 369; *Connecticut v. Massachusetts,* 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931). In fact, Intra indicated that it planned to continue selling Continental's coupons despite warnings from Continental's attorneys.

In *TransWorld,* we held that a declaratory judgment was appropriate, but the need for an injunction had not been established. Intra has not asked us to hold that even though Continental can restrict transfer of its coupons, nevertheless relief should have been limited to a declaratory judgment. *See Restatement (Second) of Torts* § 947. It seeks the right to broker the discount coupons, not limitation of Continental's relief to declaratory judgment.

### Conclusion

Continental was entitled to control its own discounting policies, including assignment of discounting coupons, and to change those policies. In the absence of evidence to support any affirmative defense, a prospective injunction enabling Continental to exercise that control was appropriate.

AFFIRMED.